329 So.2d 173

James Earl **LANDRUM**

v.

**STATE.**

I Div. 618.

Court of Criminal Appeals of Alabama.

March 16, 1976.

T. Watrous Garrett, Grove Hill, for appellant.

William J. Baxley, Atty. Gen., and William A. Davis III, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of robbery and sentenced to fifteen years in the penitentiary. Prior to arraignment he was found to be indigent and counsel was appointed to represent him. He pleaded not guilty to the indictment. He gave notice of appeal. He is in this Court with a free transcript and new counsel was appointed to represent him on appeal.

The evidence is in sharp conflict. The evidence adduced by the State shows a clear case of robbery. Appellant presented alibi testimony.

Mrs. Catherine O. Gunter testified that on January 2, 1973, she was working in her father's store in Thomasville, Alabama. Her father and mother, Mr. and Mrs. J. L. Overstreet, were both in the hospital at that time. She stated that around 11:00 a. m. that day three black men came to the store to buy gasoline, but they broke the pump handle, making it impossible to get any gas. She knew one of the men, Henry Mosley, as he had an account with the store. She asked him if he wanted her to let him have one dollar to go somewhere and buy gas and he said yes. She told him to come in the store and she would give him a dollar. Mosley followed her in the store and she reached under the counter and got the deposit bag which had some billfolds and money in it. She gave Mosley a dollar bill and put the money bag back under the counter. She stated that appellant was standing by the cash register when she got the money bag from under the counter and saw her when she put the money bag back under the counter. Appellant bought some donuts and he and Mosley left the store.

Mrs. Gunter further testified that just after 1:00 p. m. on the same day appellant returned to the store at which time he was alone. Appellant asked her to give him directions to Montgomery and she told him how to get to Montgomery from the store. At this point appellant grabbed Mrs. Gunter by her right arm with his left hand and

he had a pistol in his right hand and told her to get over there and get the money. She told him she didn't have any money and he said, "I said get over there and get the money." Appellant told her to get behind the counter and lie down on the floor with her arms behind her.

From the record:

"Q What words did he use when he told you to lie down on the floor?

"A He said, 'Get over there and lie down on the floor.' And I did. I begged him not to hurt me, and he pushed me around, made me get over there and told me to lie down, and he told me to put my hands behind my back and he tied my hands up. Well, I had held my hands where I could get them loose, and by the time he came back—he had gone up to the front of the store and he came back with some string to tie my feet up and he saw that my hands were loose, and he snatched me around and he said, 'You white bitch, lie down.' I laid down and I held my hands still and he tied them again, and then he tied my feet.

"Q. He tied your hand and your feet.

"A And my feet.

"Q And you were lying on the floor at that time?

"A Face down.

"Q Were your hands in front of you or behind you?

"A Behind me.

"Q Your hands were behind you tied?

"A They were.

"Q And your feet were tied?

"A They were.

"Q All right, what happened next?

"A He went to the cash register to get the money, and he kept asking where is the money? I told him there wasn't any money, and he kept looking and he looked up under the counter and he got this zipper deposit bag, this bank deposit bag.

"Q Let me ask you this. I ask you whether or not that is the same bag which you had gotten the dollar out of and given it to Henry Mosley in the defendant's presence earlier that day?

"A That's right, it was.

"Q All right, do you have a judgment as to how much money was in that bag?

"A Not exactly, because he got my billfold out of my purse, and my mother's billfold and my daddy's billfold, too, so all together it was around six hundred dollars. My parents were in the hospital and I was keeping their money and mine, too.

"Q Now, to whom did the money belong?

"A To me and my parents.

"Q What was your father's name?

"A J. L. Overstreet. He is deceased.

"Q Now, what happened after he got the bag?

"A He kept telling me I had better not tell anybody or he would kill me. He told me several times if I told anybody he would kill me. And he asked me where were the keys to the car out front, and I told him the keys were in the car.

"Q Whose car was out front?

"A Mine.

"Q Were there any other cars parked out front?

"A No.

"Q What happened then?

"A He left. He got the billfolds and the money and he went out the door, and he left. As soon as I heard the door

close I got up and went to the door to call for help, but he was gone by then.

"Q Did you make a complaint to any law enforcement officers as a result of this incident?

"A I did. The Thomasville City Police came out and I told them exactly what happened.

"Q Was that on the same day that this occurred?

"A It was within a few minutes afterward.

"Q And in your best judgment there was between five and six hundred dollars in the bag?

"A Yes, sir.

"Q Now, describe how the defendant was dresssed that day and his appearance, please, ma'am.

"A He had on blue jeans and a jacket of that type, dark boots, and I don't know, that's all I remember.

"Q Did you notice his face? Did you have an opportunity to observe it?

"A Yes, I studied his face. I surely did.

"Q Did he have a mask or anything on to conceal his face?

"A No, He had a bandaid over his nose and a bandaid above his eye, but I knew, I remembered him.

"Q You had an opportunity to observe him at that time?

"A I did.

"Q And you remember who that was?

"A Yes.

"Q Will you point out who that individual was that did that?

"A He's sitting over there with the blue and red shirt on unbuttoned in front."

Mrs. Gunter made a positive in-court identification of appellant as the man who robbed her at gunpoint and threatened to kill her if she told anyone.

Mr. J. C. Butler, a State Trooper Investigator, testified that after he had been given the description of the robber, he went to Mrs. Gunter's house with three or four photographs of black males for her to see if she could identify the robber. Mrs. Gunter immediately picked out appellant in State's Exhibit No. 1 as the robber.

Henry Mosley testified that on January 2, 1973, he went to Overstreet's Store in Thomasville, along with Mathew George Williams and the appellant. He said that Williams stayed in the car while he and appellant went inside the store and that Mrs. Gunter loaned him a dollar to buy gas. He then stated that all three of them left the store and he went home; that Williams and appellant left his house on foot around 11:00 that morning.

The testimony of Mathew George Williams fully corroborated the testimony of Mosley. Williams further testified that when Mosley and appellant returned to the car, appellant made the statement that the lady had a lot of money in the store. This witness further stated that he and appellant left Mosley's house together and went to appellant's brother's house; that about an hour later appellant left and the witness stayed at the brother's house and helped the brother load furniture to move.

The State then rested and appellant moved to exclude all the State's evidence and give a directed verdict for appellant without specifying any grounds. This motion was overruled and denied.

Appellant put on several members of his family in support of his alibi that he was helping his brother move and was at different places at the time Mrs. Gunter testified that he robbed the store where she was working. These alibi witnesses were not together in their testimony as to the

exact times they saw appellant. Some testified they thought he was at his brother's house at 11:30 a. m. and others said he was there between 2:00 and 2:30 p. m. One alibi witness testified that appellant came to her house around dinner time and stayed until late that afternoon.

Appellant testified that he had nothing to do with the robbery.

On cross-examination he admitted that after his arrest he was given the *Miranda* rights and warnings and signed a waiver of rights form which was admitted in evidence. He stated he signed the waiver voluntarily.

The pre-Miranda predicate was laid and appellant admitted making a voluntary statement to Chief of Police R. A. Irons of the Thomasville Police Department on March 15, 1973, in Pensacola, Florida. The statement is as follows:

"S. O. Pensa. Fla.

Statement of James Earl Landrum

C/M

"Me and Mathew George Williams were together when we robbed the store. Mathew had a toy pistol and held it under a handkerchief. Mathew George tie Mrs. Gunter up with a pair of shoe strings that I had. Mathew George drove the car. We got about $600. from Mrs. Gunter and the store, when we left we split the money and both of us took a little over $300. while we were in the car. I threw the billfold in the bushes near the dump. Mathew George went on in the car and I caught a white dude back to Thomasville and went on to Mobile that night.

/s/ James E. Landrum

WITNESSED BY CHIEF IRONS"

Appellant's counsel waived closing argument to the jury after the Assistant District Attorney had addressed the jury and then objected to the District Attorney making a closing argument. This objection was overruled.

In *Sheppard v. State*, 172 Ala. 363, 55 So. 514, the Supreme Court held:

"The matter of allowing the attorney assisting the solicitor to close the argument, notwithstanding the defendant's attorney declined to make an argument, was within the discretion of the court, and is not reversible error."

Conflicting evidence presents a question for the jury. The tendencies of the evidence justified the jury in their verdict. *Glover v. State,* 20 Ala.App. 547, 104 So. 48; *Morris v. State,* 47 Ala.App. 132, 251 So.2d 629; *Miller v. State*, 39 Ala.App. 584, 105 So.2d 711.

The conflict in the alibi testimony presented by appellant and identification testimony presented by the robbery victim was peculiarly within the province of the jury to resolve. *Smith v. State*, 53 Ala. App. 27, 296 So.2d 925; *Price v. State*, 53 Ala.App. 465, 301 So.2d 230; *Mosley v. State*, 54 Ala.App. 59, 304 So.2d 613.

We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. Accordingly, the judgment of conviction is affirmed.

AFFIRMED.

All the Judges concur.